# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

PAKENAUTH GEER,

                           Plaintiff,

    vs.                                              9:15-CV-952 (GLS/ATB)

OFFICER CHAPMAN, et al.,

                           Defendants.

---

PAKENAUTH GEER, Plaintiff pro se
MICHAEL G. McCARTIN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). Plaintiff originally filed this action in the Eastern District of New York, against several defendants, alleging violations of his constitutional rights. (Dkt. No. 1, 4). On June 29, 2015, the Honorable Carol Bagley Amon, Chief Judge in the Eastern District of New York found that the complaint did not state a claim for various reasons.[1] (Dkt. No. 5). Chief Judge Amon dismissed without prejudice to plaintiff filing an amended complaint only with respect to his First Amendment retaliation claim. (*Id.*)

On July 22, 2015, the Pro Se Office in the Eastern District of New York received plaintiff's proposed amended complaint. (Dkt. No. 6). The proposed amended

---

[1] Chief Judge Amon found that some of plaintiff's claims were barred by res judicata, and in addition, his property claims could not be brought in federal court. (Dkt. No. 5 at 3-4, 5-6). Chief Judge Amon also found that plaintiff's claim for retaliation failed to state a claim. (Dkt. No. 5 at 4-5).

complaint alleged that plaintiff's typewriter was "smashed" by defendants Chapman, McFarren, and McMillan. (Dkt. No. 6 at 1). On July 29, 2015, after reviewing the complaint for sufficiency, Chief Judge Amon transferred plaintiff's amended complaint to the Northern District of New York. (Dkt. No. 8). Chief Judge Amon found that "[s]pecifically, he claims that defendant corrections officers, who he alleges are employed at Washington Correctional Facility, took adverse action against him because he has filed lawsuits against other officers and prison officials. (*Id.* at 1). Chief Judge Amon also found that the events of which plaintiff complained took place in the Northern District of New York. (*Id.* at 2). Thus, venue was improper in the Eastern District, and the case was transferred to the Northern District of New York "in the interest of justice." (*Id.* at 1-3).

On July 30, 2015, prior to the transfer,[2] plaintiff filed a motion to amend the amended complaint. (Dkt. No. 9). On October 14, 2015, the Honorable Gary L. Sharpe, reviewed plaintiff's submissions, including the first amended complaint and plaintiff's newly filed motion to amend. (Dkt. No. 14). Judge Sharpe interpreted plaintiff's first amended complaint as alleging 1) harassment; 2) wrongful destruction of personal property; 3) First Amendment retaliation; and 4) First Amendment denial of access to courts. (Dkt. No. 14 at 5).

Judge Sharpe dismissed plaintiff's first, second, and fourth claims. (Dkt. No. 14 at 6-11). Plaintiff's first and second claims were denied on the merits and on the basis

---

[2] Although the transfer order was signed on July 29, 2015 (Dkt. No. 8), the case was electronically transferred on August 5, 2015. (Dkt. No. 10).

2

of res judicata because plaintiff brought the same claims in a previously dismissed Northern District of New York action. *Geer v. McFarren*, No. 9:14-CV-0589, Dkt. No. 1. Judge Sharpe noted that plaintiff brought his retaliation claim in 14-CV-589, but that claim had been dismissed "without prejudice." (Dkt. No. 14 at 7, n.7). Judge Sharpe denied plaintiff's motion to amend. (*Id.* at 11-12). Thus, the only remaining claim in this action is that defendants Chapman, McFarren, and McMillan destroyed plaintiff's typewriter in retaliation for plaintiff filing lawsuits against other corrections officers and prison officials as stated in the first amended complaint (Dkt. No. 6).[3] (Dkt. No. 14 at 9).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 23). Plaintiff has not responded to the motion, notwithstanding two notices from the court of his response deadline.[4] (Dkt. Nos. 24, 25). For the following reasons, this court agrees with defendants and will recommend

---

[3] The operative pleading is Dkt. No. 6.

[4] On June 23, 2016, plaintiff filed a letter, complaining that, because defense counsel had failed to include an "errata sheet" with his motion, plaintiff could not respond to the motion for summary judgment. (Dkt. No. 26). Plaintiff apparently believed that defendants were required to file such a "sheet" because an "errata sheet" was sent with the transcript of plaintiff's deposition. (Dkt. No. 26). When plaintiff received his copy of his deposition, he appears to have utilized the errata sheet to make arguments about the merits of the action while citing to specific pages of the deposition. Defense counsel responded to plaintiff's allegations, and on June 28, 2016, I issued a Text Order, informing plaintiff that defendants did produce an errata sheet with their deposition transcript. I directed the Clerk to send plaintiff a copy of the errata sheet, but denied plaintiff's "request" that defendants produce another "errata sheet" before plaintiff responded to the summary judgment motion. My June 28, 2016 Text Order was "returned undeliverable" because plaintiff had been released to the Buffalo Federal Detention Center. (Dkt. No. 29). Plaintiff ultimately filed a change of address, indicating that he had been moved to the Federal Detention Center. (Dkt. No. 30). The court sent the Text Order to plaintiff's new address, but plaintiff still failed to respond to the summary judgment motion. (Dkt. No. 31).

3

dismissal of the amended complaint.

**DISCUSSION**

**I.     Facts**

Plaintiff alleges that on April 26, 2014, Officers Chapman and McMillan "ordered" Officer McFarren to smash plaintiff's typewriter at the end of Officer McFarren's "count." (Amended Complaint ("AC") at 1). Plaintiff claims that this "order" was issued because plaintiff "filed lawsuits against many officers and officials." (*Id.*) The second page of the amended complaint appears to be a June 13, 2014 letter that plaintiff wrote to Attorney General ("AG") Eric Schneiderman, in which plaintiff mentions that the defendants broke his typewriter,[5] but essentially complains about subsequent events. Plaintiff states that he ordered another typewriter, which allegedly arrived at the facility on June 13, 2014.[6] However, in his letter to AG Schneiderman, plaintiff claims that unnamed officials refused to allow him to pick up the package, even after he was notified of its arrival. (*Id.*)

**II.    <u>Summary Judgment</u>**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a

---

[5] The letter states that it was "another notice of intention to file a claim, in which my typewriter are [sic] broken by officer McFarren and I've filed a lawsuit for my broken typewriter; so now I've order another typewriter from Union Supply Direct . . . ." (AC at 2).

[6] It appears that plaintiff wrote the letter to the Attorney General on the same day that he was allegedly prevented from obtaining the new typewriter from the package room. The letter also states that the typewriter was "shipped" on June 13, 2014, which is not possible if it arrived on June 13, 2014 and plaintiff wrote the letter on June 13, 2014. However, the court finds that plaintiff may have written the incorrect date or he has interpreted "shipping" as "arriving."

4

matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse

decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857) (2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel

7

– are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

### B. Application

Defendants argue that plaintiff has failed to exhaust his administrative remedies

8

with respect to his First Amendment retaliation claim. Defendants state that plaintiff failed to grieve the retaliation claim through the DOCCS three-level grievance mechanism. (Def.s' Mem of Law at 3-7). Defendants have filed the declaration of Karen Bellamy, the Director of the Inmate Grievance Program for the Department of Corrections and Community Supervision ("DOCCS"). (Bellamy Decl. ¶ 1) (Dkt. No. 23-2). Director Bellamy states that she has searched the CORC records to determine whether plaintiff ever filed a grievance appeal to the CORC relating to the destruction of plaintiff's typewriter at Washington in April of 2014. (Bellamy Decl. ¶ 2). Director Bellamy declares that there are no such appeals. (*Id.*) She has attached as Exhibit A to her declaration a computer print-out listing the one CORC appeal filed by plaintiff, which is not related to the retaliation issue that he raises in this amended complaint. (Bellamy Decl. ¶ 3 & Ex A). According to the computer print-out, on June 21, 2013, plaintiff filed a grievance complaining that his legal mail was not sent out. (Bellamy Decl. Ex. A at 1). The CORC appeal was decided on January 22, 2014. (*Id.*) It is the only grievance appeal brought by plaintiff that appears on the CORC list of closed cases. (*Id.*)

Plaintiff was deposed on February 12, 2016 at Washington Correctional Facility. (Pl.'s Dep.) (Dkt. No. 23-5). At his deposition, plaintiff testified that he wrote letters to the grievance committee, the Attorney General, and the Superintendent, but that was "the extent" of his exhaustion. (Pl.'s Dep. at 44-45). Plaintiff testified that he did not write to anyone else because a previous grievance was denied, and when he wrote to the CORC, "they sent me back to them so I say I have wasted my time." (*Id.* at 46).

9

Defense counsel asked:

> Q. You are describing a situation in which you wrote to the Central Office?
>
> A. Yes.
>
> Q. But that was about a different matter not about the typewriter?
>
> A. Yes. I didn't write to them about this, because it's going to be the same. They're going to say I have to put it through a grievance and I have to put it through the superintendent and they don't answer. They won't answer.

(Pl.'s Dep. at 46). It is clear that plaintiff did not file a grievance[7] or appeal it properly because he did not think that he was going to get results, because he filed a previous grievance that was denied. He believed that doing so would be a "waste of time." He believed that he would not get an answer, but had no basis for that statement. The fact that his legal mail grievance was denied at the CORC level did not justify plaintiff's failure to exhaust his retaliation grievance or any other grievance that he may have had. It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies. *See Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007) (informal steps, putting officials on "notice" are insufficient to exhaust administrative remedies); *Gizewski v. NY DOCCS*, No. 9:14-CV-124, 2016 WL 3661434, at *14 (N.D.N.Y. July 5, 2016) (notice through informal channels, including verbal complaints, is insufficient to exhaust administrative remedies).

---

[7] During his deposition, plaintiff stated that, before he wrote to the Attorney General, he "wrote" to the superintendent and the grievance committee. (Pl.'s Dep. at 44). Plaintiff stated that he knew they would not respond.

As stated above, attached to the complaint, there is a letter that plaintiff "wrote" to the Attorney General on June 13, 2014, stating that the letter was "another" notice of intention to file a claim. (AC at 2). The letter is in reference to the subsequent typewriter incident, and also states that plaintiff has already filed a lawsuit about the broken typewriter.[8] (*Id.*)

This is not a situation in which the administrative procedure was "unavailable" as discussed in *Ross, supra*. The grievance procedure was not complex. Plaintiff was not moved from Washington until long after the incident. Plaintiff was well-aware of how to bring a proper grievance because he had at least one previous grievance that was appealed to the CORC. Finally, there is no claim that the defendants prevented him from filing a grievance regarding the incident. Plaintiff's belief that bringing a grievance would be a waste of his time because it would be denied, or his unfounded belief that "they" would not answer, is not sufficient to justify his failure to exhaust. Thus, plaintiff has failed to exhaust his administrative remedies, and the complaint may be dismissed on that basis.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 23) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

---

[8] Plaintiff may be referring to the lawsuit that he brought in 2014 regarding the broken typewriter that was mentioned by Judge Sharpe in his October 14, 2015 order in this case. *Geer v. McFarren*, No. 9:14-CV-589 (DNH/TWD). The court notes that the complaint in 14-CV-589 states that he filed a grievance with the grievance committee and the superintendent. He also alleged that he sent the complaint to the CORC, but no action was taken. As shown herein, there was no appeal to the CORC of any grievance filed by plaintiff, relating to his claims in this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 26, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge